UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 0:13-cv-62415 -SEITZ

HAWK TECHNOLOGY SYSTEMS, LLC,

    Plaintiff,

v.

BURLINGTON COAT FACTORY
DIRECT CORPORATION and
BURLINGTON COAT FACTORY
WAREHOUSE CORPORATION,

    Defendants.

**DEFENDANTS BURLINGTON COAT FACTORY DIRECT CORPORATION'S AND BURLINGTON COAT FACTORY WAREHOUSE CORPORATION'S INVALIDITY CONTENTIONS**

Burlington Coat Factory Direct Corporation And Burlington Coat Factory Warehouse Corporation ("Defendants") disclose their invalidity contentions under the Patent Pretrial Order for this case. (*See* D.E. 10.) Defendants understand Hawk to be asserting claims 1, 12, and 15 of US RE43,462 ("the '462 patent"). Accordingly, Defendants will direct their invalidity contentions to only those claims.

**I.     RESERVATIONS**

    **A.     General Reservations**

Defendants reserve the right to amend these Invalidity Contentions. The information and documents that Defendants provide herein are provisional and subject to further revision. Defendants reserve the right to amend or supplement these disclosures and the subsequent document production should Plaintiff:

1) provide any information that it failed to provide in its infringement contentions; 2) amend its

infringement contentions in any way; or 3) attempt to rely upon any information at trial, in a hearing or during a deposition which it failed to provide in its infringement contentions.

### B. Discovery

Discovery is not yet open, and Defendants have not yet completed their search for and analysis of relevant prior art. Defendants reserve the right to revise, amend, and/or supplement the information provided herein, including identifying, charting, and relying on additional references, should Defendants' further search and analysis yield additional information or references, consistent with the Patent Local Rules and the Federal Rules of Civil Procedure.

Discovery is ongoing, and Defendants' prior art investigation and third-party discovery is therefore not yet complete. Defendants reserve the right to present additional items of prior art located during the course of discovery or further investigation. For example, Defendants may issue subpoenas to third parties believed to have knowledge, documentation and/or corroborating evidence concerning some of the prior art listed herein and/or additional prior art. These third parties include without limitation the authors, inventors, or assignees of the references listed in these disclosures. In addition, Defendants reserve the right to assert invalidity under other subsections of 35 U.S.C. § 102 to the extent that discovery or further investigation yield information forming the basis for such invalidity.

Additionally, Defendants have not had the opportunity to take any of the depositions of the patent applicants named on the face the '462 patent or other persons having relevant information. Defendants reserve the right to revise, amend or supplement these contentions pursuant to Federal Rule of Civil Procedure 26(e) and the local rules and any applicable Orders of record in this matter to the extent appropriate in light of further investigation and discovery regarding the defenses, the review and analysis of expert witnesses, or supplemental contentions by Plaintiff.

### C. Claim Constructions

Defendants reserve the right to revise their ultimate contentions concerning the invalidity of the asserted claims, which may change depending upon any findings as to the priority date of those claims, and/or positions that Plaintiff or expert witness(es) may take concerning infringement and/or invalidity issues. Defendants do not waive the right to contest any claim constructions or to take positions during claim construction proceedings that have yet to occur that may be inconsistent with the invalidity contentions herein. Consequently, Defendants also reserve the right to amend or supplement these Invalidity Contentions in the event that the claims are construed differently at some point in the future.

Defendants do not necessarily adopt Plaintiff's positions on the scope or construction of the claims. In certain instances, Defendants have applied the claims to the prior art in view of Plaintiff's allegations, admissions, or positions, for purposes of these contentions only. As such, Defendants' Invalidity Contentions are not adoptions or admissions by Defendants as to the accuracy of Plaintiff's allegations, admissions, or positions. Accordingly, these contentions are made in the alternative, are not necessarily intended to be consistent with each other, and should not be otherwise construed.

Defendants expressly reserve the right to take positions with respect to future claim construction or infringement issues that are inconsistent with, or even contradictory to, the claim construction or infringement positions expressed or implied in the Invalidity Contentions set forth herein.

### D. Plaintiff's Infringement Contentions

Plaintiff's infringement contentions are deficient in numerous respects. For example, Plaintiff has failed to specifically identify where each element of each asserted claim is found within each Accused Instrumentality as required, or even to identify any basis for believing

Defendants have implemented some of the identified accused third party instrumentalities. Because such deficiencies may lead to further grounds for invalidity, Defendants specifically reserve the right to modify, amend, or supplement its contentions as Plaintiff modifies, amends, or supplements its infringement contentions and/or produces documents in discovery.

### E. The Intrinsic Record

Defendants further reserve the right to rely upon applicable industry standards and prior art cited in the file histories of the '462 patent, the original U.S. Patent No. 5,625,410 ("'410 patent") of which the '462 patent is a reissue, and any related U.S. and foreign patent applications as invalidating references or to show the state of the art.  Defendants further intend to rely on the patent applicants' admissions concerning the scope of the prior art relevant to the asserted patents found in, inter alia: the patent prosecution history for the asserted patent and any related patents and/or patent applications or reissue proceedings; any deposition testimony of the named patent applicants on the asserted patent; and the papers filed and any evidence submitted by Plaintiff in connection with this or related litigation.

### F. Rebuttal Evidence

Prior art not included in these Invalidity Contentions, whether known or not known to Defendants, may become relevant.  In particular, Defendants are currently unaware of the extent, if any, to which Plaintiff will contend that limitations of the asserted claims are not disclosed in the prior art identified herein.  To the extent that such an issue arises, Defendants reserve the right to identify other references that would render obvious the allegedly missing limitation(s) of the disclosed device or method.

### G. Contextual Evidence

Defendants' claim charts cite to particular teachings and disclosures of the prior art as applied to features of the asserted claims.  However, persons having ordinary skill in the art

generally may view an item of prior art in the context of his or her experience and training, other publications, literature, products, and understanding.  As such, the cited portions are only examples, and Defendants reserve the right to rely on uncited portions of the prior art references and on other publications and expert testimony as aids in understanding and interpreting the cited portions, as providing context thereto, and as additional evidence that the prior art discloses a claim limitation or the claimed subject matter as a whole.  Defendants further reserve the right to rely on uncited portions of the prior art references, other publications, and testimony, including expert testimony, to establish bases for combinations of certain cited references that render the asserted claims obvious.  The references discussed in the claim charts may disclose the elements of the asserted claims explicitly and/or inherently, and/or they may be relied upon to show the state of the art in the relevant time frame.  The suggested obviousness combinations are provided in the alternative to anticipation contentions and are not to be construed to suggest that any reference included in the combinations is not by itself anticipatory.

### H.    Lack of Invention

Defendants reserve the right to assert that the asserted claims are invalid in the event Defendants obtains evidence that one or both of the applicants named on the asserted patent, did not "invent" any of the subject matter claimed.  Should Defendants obtain such evidence, they will provide the name of the person(s) from whom and the circumstances under which the claimed subject matter or any part of it was derived.

## II.    PRIOR ART INVALIDITY CONTENTIONS

The '462 patent may not be backdated to a date earlier than the filing of the application that led to the '410 patent (of which the '462 patent is a subsequent reissue) on April, 7, 1995. The parent applications to the '462 patent do not provide §112 support to the claims of the '462 patent. The claims of the following list of prior art render the asserted claims (1, 12, and 15 of

the '462 patent) invalid by anticipation or obviousness and are charted against the asserted claims in Exhibits 1 - 9.

| **Reference** | **Priority Date** | **Section** | **Chart** |
|---|---|---|---|
| Jonathan N. Bradley, et al., "Video Imaging for Nuclear Safeguards," IEEE Industrial Data Compression Workshop and Conference, Snow Bird, Utah, March 31 – April 1, 1994.  **("Bradley94")** | March 31, 1994 | 102(b) | Ex. 1 |
| Peter Chare, et al., "Unattended Digital Video Surveillance: A System Prototype for Euratom Safeguards," 35th Annual Meeting of the Institute of Nuclear Materials Management, Naples, Florida, July 17-20, 1994.  **("Chare94")** | July 7, 1994 | 102(a) | Ex. 2 |
| Alistar McLeod, "Automated video surveillance—teaching an old dog new tricks," SPIE Proceedings, Vol. 1989, p. 228-239, December 17, 1993.  **("McLeod93")** | December 17, 1993 | 102(b) | Ex. 3 |
| U.S. Pat. No. 5,144,661 **("Shamosh")** | September 1, 1992 | 102(b) | Ex. 4 |
| Cesar Gonzales, et al., "Flexibly scalable digital video coding," Signal Processing: Image Communcation, Vol. 5, Issues 1-2, February 1993.  **("Gonzales93")** | February 1993 | 102(b) | Ex. 5 |
| U.S. Pat. No. 5,216,502 **("Katz")** | June 1, 1993 | 102(b) | Ex. 6 |
| U.S. Pat. No. 4,302,776 **("Taylor")** | November 24, 1981 | 102(b) | Ex. 7 |
| Herman Kruegle, "CCTV Surveillance, Video Practices and Technology," Butterworth-Heinemann, December 23, 1994.  **("Kruegle94")** | December 23, 1994 | 102(a) | Ex. 8 |
| U.S. Pat. No. 5,237,408 **("Blum")** | August 17, 1993 | 102(b) | Ex. 9 |

Defendants also incorporate by reference the invalidity contentions served in *Multi-Format, Inc. v. Harrah's Entertainment, Inc. et al.*, 2-8-cv-4410 (D. New Jersey), as well as the infringement contentions submitted by other defendants in related cases involving the '462 patent co-pending in this District.

The asserted claims are invalid over this prior art for a myriad of reasons. Many different combinations of prior art invalidate these claims. The asserted claims are invalid over the prior art for at least for the following reasons, which are intended to be exemplary and based on Defendants' current understanding and the reservations listed above:

1) Claims 1 and 15 are anticipated by Bradley94.

2) Claims 1, 12, and 15 are obvious over Bradley94.

3) Claims 1, 12, 15 are anticipated by Chare94.

4) Claims 1, 12, 15 are obvious over Chare94.

5) Claims 1, 12, 15 are anticipated by McLeod93.

6) Claims 1, 12, 15 are obvious over McLeod93.

7) Claims 1, 12, 15 are obvious over McLeod93 in view of Bradley94.

Bradley94 states the well-known features of surveillance systems that would have been known to a person of ordinary skill in the art. A person of ordinary skill in the art would have readily understood that features of Bradley94 could be used with the features of McLeod93. The use of various features from McLeod93 and Bradley94 would be a simple matter of design choice to a person of ordinary skill in the art.

8) Claims 1, 12, 15 are obvious over McLeod93 in view of Chare94. Chare94 states the well-known features of surveillance systems that would have been known to a person of

ordinary skill in the art.  A person of ordinary skill in the art would have readily understood that features of Chare94 could be used with the features of McLeod93.  The use of various features from McLeod93 and Chare94 would be a simple matter of design choice to a person of ordinary skill in the art.

9) Claims 1, 12, 15 are obvious over McLeod93 in view of Gonzales93.  Gonzales93 states the well-known features of surveillance systems that would have been known to a person of ordinary skill in the art.  A person of ordinary skill in the art would have readily understood that features of Gonzales93 could be used with the features of McLeod93.  The use of various features from McLeod93 and Gonzales93 would be a simple matter of design choice to a person of ordinary skill in the art.

10) Claims 1, 12, 15 are obvious over Shamosh in view of Kruegle94.  Taylor states the well-known features of surveillance systems that would have been known to a person of ordinary skill in the art. A person of ordinary skill in the art would have readily understood that features of Taylor could be used with the features of Kruegle94.  The use of various features from Shamosh and Kruegle94 would be a simple matter of design choice to a person of ordinary skill in the art.

11) Claims 1, 12, 15 are obvious over Shamosh in view of Bradley94.  Bradley94 states the well-known features of surveillance systems that would have been known to a person of ordinary skill in the art.  A person of ordinary skill in the art would have readily understood that features of Bradley94 could be used with the features of Shamosh.  The use of various features from Shamosh and Bradley94 would be a simple matter of design choice to a person of ordinary skill in the art.

12) Claims 1, 12 are obvious over Shamosh in view of Gonzales93. Gonzales93 states the well-known features of surveillance systems that would have been known to a person of ordinary skill in the art.  A person of ordinary skill in the art would have readily understood that features of Gonzales93 could be used with the features of Shamosh.  The use of various features from Shamosh and Gonzales93 would be a simple matter of design choice to a person of ordinary skill in the art.

13) Claims 1, 12 are obvious over Shamosh in view of Katz.  Katz states the well-known features of surveillance systems that would have been known to a person of ordinary skill in the art.  A person of ordinary skill in the art would have readily understood that features of Katz could be used with the features of Shamosh.  The use of various features from Shamosh and Katz would be a simple matter of design choice to a person of ordinary skill in the art.

14) Claims 1, 12 are obvious over Shamosh in view of Taylor.  Taylor states the well-known features of surveillance systems that would have been known to a person of ordinary skill in the art.  A person of ordinary skill in the art would have readily understood that features of Taylor could be used with the features of Shamosh.  The use of various features from Shamosh and Taylor would be a simple matter of design choice to a person of ordinary skill in the art.

15) Claims 1, 12, 15 are obvious over Kruegle94.

16) Claims 1, 12, 15 are obvious over Kruegle94 in view of Bradley94.  Bradley94 states the well-known features of surveillance systems that would have been known to a person of ordinary skill in the art.  A person of ordinary skill in the art would have readily understood that features of Bradley94 could be used with the features of Kruegle94.  The use of various features from Kruegle94 and Bradley94 would be a simple matter of design choice to a person of ordinary skill in the art.

17) Claims 1, 12, 15 are obvious over Kruegle94 in view of Chare94. Chare94 states the well-known features of surveillance systems that would have been known to a person of ordinary skill in the art. A person of ordinary skill in the art would have readily understood that features of Chare94 could be used with the features of Kruegle94. The use of various features from Kruegle94 and Chare94 would be a simple matter of design choice to a person of ordinary skill in the art.

18) Claims 1, 12, 15 are obvious over Kruegle94 in view of Gonzales93. Gonzales93 states the well-known features of surveillance systems that would have been known to a person of ordinary skill in the art. A person of ordinary skill in the art would have readily understood that features of Gonzales93 could be used with the features of Kruegle94. The use of various features from Kruegle94 and Gonzales93 would be a simple matter of design choice to a person of ordinary skill in the art.

19) Claims 1, 12, 15 are obvious over Kruegle94 in view of Katz. Katz states the well-known features of surveillance systems that would have been known to a person of ordinary skill in the art. A person of ordinary skill in the art would have readily understood that features of Katz could be used with the features of Kruegle94. The use of various features from Kruegle94 and Katz would be a simple matter of design choice to a person of ordinary skill in the art.

20) Claims 1, 12, 15 are obvious over Kruegle94 in view of Taylor. Taylor states the well-known features of surveillance systems that would have been known to a person of ordinary skill in the art. A person of ordinary skill in the art would have readily understood that features of Taylor could be used with the features of Kruegle94. The use of various features from

Kruegle94 and Taylor would be a simple matter of design choice to a person of ordinary skill in the art.

21) Claims 1, 12, 15 are obvious over Blum in view of Bradley94. Bradley94 states the well-known features of surveillance systems that would have been known to a person of ordinary skill in the art. A person of ordinary skill in the art would have readily understood that features of Bradley94 could be used with the features of Blum. The use of various features from Blum and Bradley94 would be a simple matter of design choice to a person of ordinary skill in the art.

22) Claims 1, 12, 15 are obvious over Blum in view of Gonzales93. Gonzales93 states the well-known features of surveillance systems that would have been known to a person of ordinary skill in the art. A person of ordinary skill in the art would have readily understood that features of Gonzales93 could be used with the features of Blum. The use of various features from Blum and Gonzales93 would be a simple matter of design choice to a person of ordinary skill in the art.

### III.   INITIAL § 112 INVALIDITY CONTENTIONS

####   A.   Indefiniteness

1) Claims 1 and 15 include the claim element "means to receive the signals from each camera and digitally compress the images." This is a means plus function term under 35 U.S.C. § 112(f). These claims are indefinite because the specification discloses no algorithm for compressing images.

2) Claims 1 and 15 include the claim element "means to receive externally derived operator commands." This is a means plus function term under 35 U.S.C. § 112(f). These claims are indefinite because the specification discloses no structure and no algorithm for receiving externally derived operator commands.

3) Claim 12 is indefinite, because "the video source images" lacks antecedent basis.

4) Claim 15 includes the claim element "means for sensing a deviation from the normal-state image scene associated with at least one of the video cameras." This is a means plus function term under 35 U.S.C. § 112(f). This claim is indefinite because the specification discloses no structure and no algorithm for sensing a deviation from the normal-state image scene associated with at least one of the video cameras.

B. **Lack of Written Description**

1) Claims 1 and 15 are invalid for lack of written description support because the patent lacks a complete disclosure unambiguously showing that the inventors had possession of an alleged invention that receives externally derived operator commands.

2) Claims 1 and 15 are invalid for lack of written description support because the patent lacks a complete disclosure unambiguously showing that the inventors had possession of an alleged invention that does not use a form of tape as at least one of the high-capacity storage media.

3) Claim 12 is invalid for lack of written description support because the patent lacks a complete disclosure unambiguously showing that the inventors had possession of an alleged invention converting one or more of the video source images into a data storage format using a second set of temporal and spatial parameters associated with each image.

4) Claim 15 is invalid for lack of written description support because the patent lacks a complete disclosure unambiguously showing that the inventors had possession of an alleged invention that senses a deviation from the normal-state image scene associated with at least one of the video cameras.

C. **Lack of Enablement**

1) Claims 1 and 15 are not enabled because the patent fails to teach a person of

ordinary skill in the art to make or use a device that receives externally derived operator commands without undue experimentation.

   2)  To the extent claims 1 and 15 are read to cover a device that does not use a form of tape as high capacity storage, these claims are not enabled because the patent fails to teach a person of ordinary skill in the art to make or use a device that does not use a form of tape as one of the forms of high-capacity storage.

   3)  Claim 12 is not enabled because the patent fails to teach a person of ordinary skill in the art to make or use a device that converts one or more video source images into a data storage format using a second set of temporal and spatial parameters associated with each image.

   4)  Claim 15 is not enabled because the patent fails to teach a person of ordinary skill in the art to make or use a device that senses a deviation from the normal-state image scene associated with at least one of the video cameras without undue experimentation.

Dated: April 25, 2014       *s/Thomas Meeks*
               Thomas Meeks
               tmeeks@cfjblaw.com
               **CARLTON FIELDS JORDEN BURT**
               100 S.E. Second Street, Suite 4200
               Miami, Florida 33131-2114
               Tel.: (305) 530-0050
               Fax: (305) 530-0055

               Stephen J. Joncus (*admitted pro hac vice*)
               stephen.joncus@klarquist.com
               Derrick W. Toddy (*admitted pro hac vice*)
               derrick.toddy@klarquist.com
               **KLARQUIST SPARKMAN, LLP**
               121 S.W. Salmon Street, Suite 1600
               Portland, Oregon  97204
               Telephone:  (503) 595-5300
               Facsimile:  (503) 595-5301
               *Attorneys for Defendants Burlington Coat Factory Direct Corporation and Burlington Coat Factory Warehouse Corporation*

## **CERTIFICATE OF SERVICE**

I hereby certify that on April 25, 2014, a true and correct copy of the foregoing was filed with the Clerk of the Court using the Court's CM/ECF system and served on all counsel receiving electronic notification via the Court's CM/ECF system.

*s/Thomas Meeks*
Thomas Meeks

## **SERVICE LIST**

Angela M. Lipscomb, Esq.
alipscomb@lebfirm.com
**LIPSCOMB, EISENBERG & BAKER, PL**
2 South Biscayne Blvd., Penthouse 3800
Miami, FL 33131
Telephone: 786-431-2228
Facsimile: 786-431-2229

*Attorneys for Plaintiff Hawk Technology Systems, LLC*
*(via electronic filing)*